## A02A0528. WILLIAMS v. THE STATE.
(568 SE2d 132)

RUFFIN, Judge.

A jury found Tommy Lee Williams guilty of theft by receiving, driving under the influence, attempting to elude a police officer, and being an habitual violator. On appeal, Williams contends that the trial court erred in excluding the testimony of his expert witness and in admitting into evidence his custodial statement. Williams also asserts that he received ineffective assistance of trial counsel. For reasons that follow, we affirm.

The record shows that around midnight the morning of March 15, 2000, Officer Dereck Shelton was on patrol when he saw a van

---

run a stop sign. Shelton activated his lights and siren and pursued the van a short distance, until the driver stopped the van and fled on foot down a wooded path. Although it was night, Shelton testified that the lighting was "good" and that he was able to get a "good look" at the driver, whom Shelton described as thin in stature, wearing whitewashed jeans and a tan, long sleeved sweater.

After securing the van and calling for backup, Shelton pursued the driver. While in pursuit, Shelton encountered Larry Jones, whose house was at the end of the path. Shelton asked if Jones had seen anyone come down the path, and Jones responded "Tommy Lee" and pointed to Williams, who was walking toward Shelton. According to Shelton, Williams was wearing whitewashed jeans and a tan, long sleeved sweater, and he was perspiring. Shelton testified that he had "no doubt" Williams was the driver of the van.

Shelton arrested Williams for obstruction and for running the stop sign and took him back to the van. While Shelton was asking Williams for his name and date of birth, Shelton noticed that Williams' eyes were red, and he smelled alcohol on Williams' breath. Believing Williams to be under the influence, Shelton read him the implied consent notice. Williams was subsequently given a breathalyzer test that showed his blood alcohol content to be 0.115, which is above the legal limit.[1] It was later discovered that Williams had been declared an habitual violator and that his driver's license had been revoked.

At some point, Shelton learned that Williams did not own the van, which was registered to Miguel Monzon. Monzon testified that he left the van outside of his apartment in Norcross the night of March 14 and that he had not given anyone permission to drive the van. Accordingly, Williams was charged with theft by receiving stolen property.[2]

1. While Williams was being transported to the police station, he told Shelton "that he was in the van earlier, but was dropped off." Williams then informed Shelton that he would appreciate any leniency in treatment. Prior to trial, Williams moved to suppress this statement. Although Shelton had read Williams his *Miranda* rights, Williams nonetheless asserted that the statement was involuntary. During the *Jackson-Denno* hearing, Dr. John Watkins, a clinical psychologist, testified that, with an IQ of 58, Williams likely did not appreciate the import of his right to remain silent.

The State objected to the admission of Dr. Watkins' testimony,

---

[1] See OCGA § 40-6-391 (a) (5) (2000). Williams actually provided two breath samples – the first registered 0.126 and the second 0.115.

[2] Williams also was charged with theft by taking, but the jury acquitted him of this charge.

asserting that Williams failed to provide a copy of the doctor's report during discovery.[3] The State also contended that it was prejudiced by Williams' failure because it had not procured its own expert to refute Dr. Watkins' testimony. According to Williams' attorney, he provided Dr. Watkins' name to the State on a witness list, and he intended to provide the report, but he could not recall whether he had in fact done so. The trial court nonetheless granted the State's motion to exclude Dr. Watkins' "evaluation and report" based upon Williams' failure to produce the results of the report during discovery.[4] On appeal, Williams contends that the trial court erred in excluding this evidence.

Pursuant to OCGA § 17-16-6, if a defendant fails to comply with the requirements of the reciprocal discovery procedures, a trial "court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed. . . ." Under the clear language of this statute, a showing of bad faith is required to impose the harsh sanction of excluding the evidence.[5] Here, the trial court made clear that it was excluding the evidence based solely upon the fact that Williams had not timely provided the report. And the trial court made no finding that, in so doing, Williams acted in bad faith. Given the evidence that Williams timely provided Dr. Watkins' name and address to the State during discovery, it does not appear that he was attempting to hide the information from the State. Moreover, Williams was more than willing to agree to a continuance to remedy the late disclosure. "Absent a showing of prejudice to the State and bad faith by [Williams, Dr. Watkins] should have been allowed to testify."[6] It follows that the trial court erred in excluding this evidence.[7]

Notwithstanding this error, we find no basis for reversal. " '[E]rror alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error.' "[8] We find the admission of Williams' statement harmless.

The sole purpose for the admission of Dr. Watkins' testimony was

[3] Williams opted into the reciprocal discovery provisions of OCGA § 17-16-1 et seq., and the State then moved to obtain all scientific reports.

[4] Following the *Jackson-Denno* hearing, the trial court concluded that Williams' statement was voluntary. It is unclear from the trial court's ruling whether it considered Dr. Watkins' testimony in reaching this issue. For the purpose of our analysis, we assume that the court did not consider the excluded testimony.

[5] See *Tucker v. State*, 222 Ga. App. 517, 518 (3) (474 SE2d 696) (1996); *Hill v. State*, 232 Ga. App. 561, 562 (502 SE2d 505) (1998) (physical precedent only).

[6] See *Massey v. State*, 272 Ga. App. 50, 52 (4) (525 SE2d 694) (2000).

[7] Compare *Jones v. State*, 251 Ga. App. 285, 286 (1) (554 SE2d 238) (2001) (trial court properly excluded evidence based upon showing of bad faith and prejudice to the State).

[8] *Thomas v. State*, 253 Ga. App. 58, 60 (1) (557 SE2d 483) (2001).

to challenge the voluntariness of Williams' statement. Thus, if the admission of the statement was harmless, so, too, was the exclusion of Dr. Watkins' testimony. In his statement, Williams never admitted to committing any offense — he merely conceded that he had been in the van at some point and requested leniency. Arguably, this statement is not incriminating, in which case its admission could not harm Williams. Even assuming that the statement is properly characterized as incriminating, reversal still is not warranted. Officer Shelton unequivocally identified Williams as the man driving the van. In light of this evidence of Williams' guilt, it is highly unlikely that Williams' statement contributed to the verdict.[9] Accordingly, the trial court's decision to exclude Dr. Watkins' testimony was not harmful.

In a related enumeration of error, Williams contends that the trial court erred in admitting his statement because it was involuntary. For the reasons discussed above, however, the statement's admission was harmless and presents no basis for reversal.

2. In two enumerations of error, Williams contends he received ineffective assistance of trial counsel. According to Williams, his attorney rendered ineffective assistance by failing to timely provide Dr. Watkins' report to the State and by failing to object to hearsay. To sustain such claim of ineffective assistance, Williams "must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. Prejudice arises where there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel."[10] Assuming, for the sake of argument, that Williams' attorney rendered ineffective assistance, Williams' claim still fails as he cannot establish prejudice.

With respect to Williams' assertion that his attorney was ineffective for failing to timely provide Dr. Watkins' report, he is unable to show prejudice for the reasons stated in Division 1. Williams also argues that he was prejudiced by his attorney's failure to object to hearsay testimony. Specifically, Williams points to Shelton's testimony that Jones identified Williams as "Tommy Lee." Again, assuming that Williams' attorney should have objected to this testimony, his failure to do so has not prejudiced Williams.

It is well settled that hearsay lacks probative value.[11] Accordingly, the admission of hearsay even "without objection[,] does not

---

[9] See *Massey*, supra; *Beck v. State*, 250 Ga. App. 654, 659-660 (4) (551 SE2d 68) (2001).

[10] (Punctuation and footnote omitted.) *Hooper v. State*, 251 Ga. App. 533, 538 (4) (554 SE2d 750) (2001).

[11] See *Curtis v. State*, 190 Ga. App. 173, 175 (2) (378 SE2d 516) (1989), overruled in part on other grounds, *Brown v. State*, 274 Ga. 31, 34 (1) (549 SE2d 107) (2001).

give it any weight or force whatever in establishing a fact."[12] Thus, the mere fact that Williams' attorney did not object to the hearsay does not preclude Williams from arguing that it improperly contributed to the verdict or unduly influenced jurors, neither of which Williams contends on appeal.[13] Rather, Williams focuses on his lawyer's culpability for failing to object to the hearsay. By neglecting to explain how, exactly, the attorney's alleged failure harmed him, Williams has not shown prejudice.

Moreover, we find the evidence more than ample to support the jury's verdict, even without the hearsay testimony. Thus, in any event, Williams is unable to establish prejudice, which is necessary to warrant reversal based upon ineffective assistance of counsel.[14]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JULY 1, 2002.

*Steven P. Berne*, for appellant.

*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney*, for appellee.

---

[12] (Citation and punctuation omitted.) *Curtis*, supra.

[13] Although Williams asserts that the "case would have come out differently if the trial counsel had objected to the hearsay," he fails to establish how the result might have differed.

[14] See *Ricarte v. State*, 249 Ga. App. 50, 56 (4) (d) (547 SE2d 703) (2001).